IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TRICIA CARLSON,

   *Plaintiff*,

vs.           Case No. 21-1179 -EFM

STANDARD INSURANCE COMPANY,

   *Defendant*.

**MEMORANDUM AND ORDER**

Plaintiff Trisha Carlson brings the present action against Standard Insurance Company seeking a declaration that she is entitled to benefits under a group insurance policy issued by Standard. She also seeks damages for the denial of benefits based on theories which include fraud and breach of contract. Defendant has moved to dismiss the action under Fed. R. Civ. Pr. 12(b)(6) on the grounds that the group policy was issued to an agency of the State of Kansas, and that the Court lacks subject matter jurisdiction in light of Plaintiff's failure to exhaust administrative remedies. The Court finds that Plaintiff failed to exhaust mandatory statutory remedies, and dismissal is appropriate.

## I. Factual and Procedural Background

Defendant Standard issued the group life insurance policy to the Kansas Public Employees Retirement System (KPERS) Board of Trustees. According to Plaintiff Trisha Carlson, Erik Carlson was insured through the group policy at the time of his death on October 10, 2016. Plaintiff filed a claim for benefits under the policy, which Standard denied.

Standard denied benefits on the grounds that Erik Carlson had been terminated from his employment on July 29, 2016, and hence was not covered under the policy at the time of his death. Plaintiff contends that while July 29, 2016 was Erik's last day of work, he was not formally terminated until August 30, 2016, and that his October 10, 2016 death fell with a 60-day period for converting the policy, in an option which Standard had offered.

On June 17, 2021, Plaintiff filed a Petition in Sedgwick County District Court against Defendant, seeking a declaration that the policy remained in effect, along with claims for recovery including fraud, breach of contract and unjust enrichment. Defendant removed the action to this Court on July 23, 2021.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a

claim to relief that is plausible on its face.'"[1]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[2]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[3]  Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[4]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[5]

### III.     Analysis

KPERS is an agency of the State of Kansas, established for the purpose of providing retirement and other benefits to certain public employees.[6]  Among other things, the KPERS Board of Trustees is authorized to contract with one or more

---

[1] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[3] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); see also Fed. R. Civ. P. 8(a)(2).

[4] *Iqbal*, 556 U.S. at 678.

[5] *See id*. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

[66] *See* K.S.A § 74-4901, et seq.

insurance companies to underwrite and/or administer the KPERS plan of life insurance benefits.[7]  The KPERS Policy at issue provides:

> If the claimant disagrees with our [KPERS and Standard] decision, before taking legal action, the claimant must make a written request to the Policyholder [KPERS] for a hearing pursuant to K.S.A. 74-4904(2) within 30 days after we send written notice of our decision.

The Kansas statute cited in this provision states that a public agency has up to 60 days after an aggrieved person's request to conduct a hearing. The hearing must be held in accordance with the Kansas Administrative Procedure Act (KAPA).[8]  In addition, such hearings by public agencies like KPERS are subject to the Kansas Act for Judicial Review (KJRA), which provides that persons may obtain judicial review "only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review."[9]

Plaintiff responds to the motion to dismiss with two arguments.  First, she suggests that the exhaustion requirement should be excused, reciting case authority reaching this result when a plan lacks reasonable claim procedures. Second, she argues that she did effectively exhaust remedies in light of a 2019 demand letter sent by her attorney shortly before filing suit.

---

[7] *See* K.S.A. § 74-4927(3)(B).

[8] K.S.A. 77-501, *et seq.*

[9] K.S.A. 77-612.

The Plaintiff's first argument, that the exhaustion requirement should be excused, fails for two reasons. First, the authorities cited by Plaintiff all involve actions against private plans under ERISA.[10] Pursuant to an ERISA-specific regulation,[11] courts may excuse the exhaustion of remedies under certain circumstances. They can do this because the exhaustion requirement is not a jurisdictional prerequisite under ERISA.[12] But, as a governmental agency, KPERS is not subject to ERISA.[13] And the Kansas Supreme Court has expressly determined that the exhaustion requirement of the KJRA is indeed a jurisdictional prerequisite to suit.[14]

But even if the court were to ignore this jurisdictional requirement and somehow apply the deemed-exhausted doctrine of federal law, Plaintiff has done absolutely nothing to show that she is entitled to the protection of the doctrine under the circumstances of this case. A party invoking the doctrine in ERISA actions must show the existence of "deficiencies [which] actually denied the participant a reasonable

---

[10] *See, e.g.*, *Holmes v. Colo. Coal for the Homeless Long Term Disability Plan*, 762 F.3d 1195 (10th Cir. 2014).

[11] 29 C.F.R. § 2560.503-1(l).

[12] Several circuit courts have expressly held the requirement is not jurisdictional. *See, e.g., Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 n.2 (9th Cir. 2008); *Crowell v. Shell Oil Co.*, 541 F.3d 295, 308–09 (5th Cir. 2008); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279–80 (3d Cir. 2007). The Tenth Circuit has not directly addressed the issue. However, this court has concluded that, if the Tenth Circuit were to address the issue, it would reach the same conclusion. *Tronsgard v. FBL Fin. Group*, 312 F.Supp.3d 982, 1004 (D. Kan. 2018); *Richardson v. Kellogg Co.*, 2014 WL 7338844, at *3-7 (D. Kan. 2014).

[13] Insurance plans provided by government agencies to their employees are expressly exempted from ERISA. 29 U.S.C. § 1003(b)(1). *See also id.*, § 1002(32) (defining "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing").

[14] *Kingsley v. Kansas Dep't of Revenue*, 288 Kan. 390, 410, 204 P.3d 562, 576 (2009).

review procedure."[15] Here, Plaintiff makes not even an attempt to explain how KPERS or Defendant prevented her from requesting a timely hearing for review. Instead, Plaintiff does no more than cite to existence of the doctrine before hurrying on to her second argument—that, if exhaustion is not excused, it should be deemed satisfied by her attorney's letter of July 19, 2019.[16]

But this letter does not attempt to meet the framework for administrative remedies created by the Policy and Kansas law. Under that framework, as noted earlier, disputes are to be resolved by a hearing, which KPERS may schedule up to 60 days after a request. The hearing is to be conducted according to the procedures set forth in the KAPA.

The letter of July 19, 2019, in contrast, is a classic attorney demand letter, in which counsel wrote:

> KPERS and/or Defendant is responsible for the payment of the death benefit and any applicable claim interest in this matter…. My client has agreed to postpone filing suit, however, until August 23, 2019 to give you an opportunity to review the matter so we may reach an amicable agreement sans litigation.[17]

---

[15] *Holmes*, 762 F.3d at 1213.

[16] Plaintiff's reliance on this 2019 letter is new. In her Petition, she states instead that it was an earlier, November 5, 2018 letter by her attorney which "satisfies all requirements for exhaustion of administrative remedies." (Dkt. 1-3, ¶ 19). Both letters are similar in that they cannot be reasonably be construed to seek a KAPA hearing by the agency. Rather, counsel "demands immediate payment," and states that if this does not occur he "will have no choice but to file suit." (Dkt. 7-2).

[17] Dkt. 17, at 4.

The letter requests no hearing, and warns that suit will be filed in one month in the absence of a settlement.

Plaintiff cites only a single case to support her argument, *Davis v. Prudential Insurance*.[18] In *Davis*, the court held that an attorney letter was sufficient to constitute a "notice of appeal" for exhaustion purposes. However, the case bears little similarity to the present action. First, it was an action under ERISA which, as the court noted earlier, does not require exhaustion as a jurisdictional prerequisite.

Second, the attorney communication in *Davis* explicitly asked for an appeal. Prudential claimed the notice was defective because it omitted a case control number and certain medical records. In response, the court stressed the extremely modest nature of Prudential's requirements for exhaustion—its letter to the insured had stated a notice of appeal "must" be in writing and be made within 180 days, but otherwise merely stated an appeal "should" include information such as a control number. This meant Prudential "recommended but did not strict require the inclusion of these … types of information."[19] The letter was in writing and timely; the omitted information was "not significant," the court found, because Prudential could easily determine the claim control number from the letter's recital of claimant's name, date of birth, and

---

[18] 2018 WL 3094885 (M.D. Ala. 2018).

[19] *Id*. at *5 (citing Garner's Modern American Usage, 744 (3d ed. 2009)).

7

policy number, and because the letter explicitly referred to medical records which had been previously given to Prudential.[20]

In the present case, the letter of July 19, 2019 did not merely omit some recommended claim information. The letter did not even implicitly seek a hearing as required by the Policy and state law. Rather, by demanding an immediate settlement, the letter sought to effectively circumvent state statutes requiring specific administrative procedures. Carlson was required to make a written request to KPERS for a hearing pursuant to K.S.A. § 74-4904(2) before she took legal action. The demand for immediate settlement is inconsistent with the procedure set forth by Kansas statute, and accordingly Plaintiff failed to exhaust her administrative remedies. As a result, the court lacks jurisdiction to entertain Plaintiff's action premised on the denial of benefits.

In light of this conclusion, the Court need not address Defendant's additional contention that Plaintiff's fraud claim should be dismissed because it lacks particularity and because it is untimely.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendant (Dkt. 6) is granted.

---

[20] *Id.*

**IT IS SO ORDERED.**

Dated this 6th day of January, 2022.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE